**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| LAVINSTON LAMAR, : | Civ. No. 05-155 (GEB) |
| Petitioner, : | MEMORANDUM OPINION |
| v. : |   |
| UNITED STATES OF AMERICA, : |   |
| Respondent. : |   |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of *pro se* petitioner[1], Lavinston Lamar ("Petitioner"), to vacate, set aside, or correct his sentence pursuant to Title 28, United States Code, Section 2255. For the reasons set forth in this Memorandum Opinion, issued without oral argument pursuant to Federal Rule of Civil Procedure Rule 78, Petitioner's motion is denied.

**I.   BACKGROUND**

    **A.   Procedural History**

On April 19, 2002, Petitioner was arrested and charged under two New Jersey state laws. (Petr.'s Br. ¶ 1.) The first was under section 2C:35-5b(3), possession of a controlled dangerous substance with intent to distribute, and the second was under 2C:35-10A(4), possession of a controlled dangerous substance, marijuana, under 50 grams. *Id.* Petitioner was also indicted for

---

[1] Petitioner obtained counsel after filing the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner's counsel filed a Supplemental Memorandum of Law in support of Petitioner's motion on May 13, 2005.

actions which violated 21 U.S.C. § § 841 (a)(1), 841 (b)(1)(A) and 18 U.S.C. § 2 (possession with intent to distribute more than 50 grams of cocaine base).  (Resp.'s Br. at 4).

On November 4, 2002, a motion to suppress evidence was filed by Petitioner's counsel, Robert Arge.  (Petr.'s Br. ¶ 3).  Petitioner plead guilty to a one-count indictment on November 21, 2002.  (Resp.'s Br. at 4).  Petitioner signed a plea agreement, and pled guilty to the crime of possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § § 841 (a)(1), 841 (b)(1)(A) and 18 U.S.C. § 2 on April 19, 2002.  *Id.*  Petitioner was advised of his rights and consented to the plea agreement during the plea hearing.  (Tr. of Plea, 15:1-25, 16:1-18).

The Court adopted the pre-sentence report prepared by the United States Probation Department when sentencing the Petitioner to a mandatory minimum of 120 months.  *Id.* at 4-5.  The pre-sentence report placed the Petitioner at a base offense level of 29 and a criminal history category III, with a guideline range of 108-135 months.  *Id.* at 4.  The offense to which defendant plead guilty carried a mandatory minimum sentence of 120 months, therefore the appropriate range became 120-135 months.  *Id.*

Petitioner appealed his sentence on July 31, 2003.  *Id.* at 5.  On January 20, 2004, the decision of the District Court was affirmed by the Third Circuit.  *Id.*  The Petitioner filed a motion, *pro se*, to vacate, set aside, or correct sentence, pursuant to Title 28 U.S.C. § 2255 on January 12, 2005.  *Id.* at 6.

B.   **Factual History**

According to the Government, the Cumberland County Prosecutor's office, in connection with the Bridgeton City Police Department, commenced an investigation regarding local

narcotics trafficking in July 2001.  (Resp.'s Br. at 2).  In the course of the investigation, the Government claims that the Petitioner was identified by two separate and unique informants as a purchaser and distributer of large amounts of cocaine base. *Id.* at 2.  The Government contends that the informants contacted the law enforcement officials to notify them of a "run" the Petitioner would be making to Philadelphia in a Cadillac Seville on April 19, 2002. *Id.*

Based upon this information and surveillance of several common roadways between Philadelphia and Bridgeton, the law enforcement officers stopped a Cadillac Seville driven by the Petitioner on April 19, 2002. *Id.*  The police officer searched the vehicle after noticing an odor of marijuana. *Id.*  The police recovered approximately five grams of suspected marijuana and a bag of suspected cocaine base, and the Petitioner was arrested. *Id.*  Subsequent to the arrest, the Petitioner claimed the cocaine base as his own and informed the police that it was purchased in Philadelphia for $2,800. *Id.*  The Drug Enforcement Administration Special Agents also discovered approximately 241.5 grams of cocaine and 31.8 grams of marijuana in the Petitioner's residence while conducting a search pursuant to a search warrant. *Id.* at 2-3.

**II.    DISCUSSION**

   **A.    Motion to Vacate, Correct, Or Set Aside Under 28 U.S.C. § 2255**

Section 2255 of Title 28, of the United States Code, permits a court to vacate, correct or set aside a sentence that:

> was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . .

3

28 U.S.C. § 2255. However, section 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986), *cert. denied*, 511 U.S. 1033 (1994)). Moreover, the district court is within its jurisdiction to decline to relitigate issues brought on collateral proceedings under section 2255 if those issued have been raised and decided at both the criminal defendant's trial and on direct appeal. *United States v. Orejuela,* 639 F.2d 1055, 1057 (3d Cir. 1981); *see also United States v. Parker*, No. 03-6926, 2006 U.S. Dist. LEXIS 12711, at *6 (E.D.Pa. 2006).

### B. Ineffective Assistance of Counsel

The cause of action for ineffective assistance of counsel flows from the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate:

> First, . . . that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. at 687.

The actual prejudice prong of the *Strickland* test is met when the Petitioner shows "that counsel's errors were so serious as to deprive [Petitioner] of a fair [hearing] whose result is reliable." *Id.* at 687; *see also Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (explaining that to determine prejudice, the Court considers the underlying fairness and reliability of the result of the

proceeding in addition to whether the outcome would have been different but for counsel's errors).  However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Petitioner contends that his sentence should be vacated and he should be re-sentenced.  In the alternative, Petitioner requests that his conviction be vacated and a new trial be granted.  Petitioner claims that his Sixth Amendment rights were violated due to ineffective assistance of counsel, specifically that "counsel persuaded Petitioner to sign a plea agreement, under the guise that he could still argue his motion to suppress evidence."  (Petr.'s Br. ¶ 7). Petitioner claims that he signed the plea agreement only after understanding that the motion to suppress evidence would remain active.  *Id.* at ¶ 10.  While entering his plea pursuant to the plea agreement on November 21, 2002, Petitioner contends that there was no mention of the status of the suppression motion.  *Id.* at ¶ 11.  The Petitioner claims that he was not informed that his counsel would withdraw the motion to suppress.  *Id.* at ¶ 12.  Petitioner maintains that he has met his burden under the *Strickland* standard "by showing that his counsel, Mr. Arge, provided ineffective assistance with respect to his plea agreement."  *Id.* at ¶ 22.  However, Petitioner provides no further support for this claim.

Despite Petitioner's claim that the motion to suppress was not mentioned during the plea hearing, counsel did, in fact, discuss the motion during that hearing.  (Tr. of Plea, 23:7-13, Nov. 21, 2002).  Petitioner also consulted with his attorney regarding the motion, and was in agreement with his attorney as to the decision to withdraw the motion to suppress.  *Id.* at 23:14-15.

5

> [Counsel]: Yes, one other representation, Your Honor. We had filed a notice of motion and motion to suppress. We are, of course, withdrawing that motion as a result of Mr. Lamar's guilty plea. He and I did confer in advance of today's court appearance about whether or not he should go forward with the motion to suppress. After consultation we have agreed not to pursue that motion, Your Honor.
> [The Court]: Is that correct, Mr. Lamar?
> [Petitioner]: Yes.

*Id.* at 23:7-15. Petitioner was fully aware of the decision to withdraw the motion to suppress and informed the Court, under oath, of his knowledge of that decision.

### 1. *Petitioner Does Not Meet The Standard for Ineffective Assistance of Counsel*

The first prong of the *Strickland* test requires that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Additionally, "[c]ounsel's performance is measured against an objective standard of reasonableness under prevailing professional norms." *Dougherty v. Stickman,* No. 04-2286, 2005 U.S. App. LEXIS 24988, at *3 (3d Cir. 2005). Petitioner has offered no evidence to support his claim that counsel's actions do not meet the reasonableness standard. The Petitioner contends that counsel "persuaded" and "coerced" him into signing the plea agreement, and that he would not have entered into the agreement had he known that the motion to suppress would be withdrawn. (Petr.'s Br. ¶¶ 7, 10, 13). However, the transcript of the plea hearing clearly demonstrates that Petitioner was aware of the decision to withdraw the motion. (Tr. of Plea, 23: 7-15, Nov. 21, 2002). Petitioner answered the Court's questions regarding the motion affirmatively, indicating that he understood and agreed with his attorney's statement that the motion was being withdrawn. *Id.*

6

According to *Strickland*, "judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland*, 466 U.S. at 689. The transcript clearly demonstrates that Petitioner informed the Court that he was aware that the motion to suppress would be withdrawn. (Tr. of Plea, 23:7-15, Nov. 21, 2002). Accordingly, the actions of counsel fall within the presumption of reasonableness as Petitioner has not provided this Court with evidence to demonstrate otherwise.

The second prong of the *Strickland* test states that the actions of counsel must have prejudiced the defense. *Id.* at 687. Here, the Petitioner must demonstrate "that counsel's errors were so serious as to deprive [Petitioner] of a fair [hearing] whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). The Petitioner claims that had he been aware of the effects of the plea agreement on the motion to suppress, he would not have signed the plea agreement. (Petr.'s Br. ¶ 10). When determining if the Petitioner received a fair hearing, this Court must also look to the underlying fairness and reliability of the proceeding, as well as whether the same result would have occurred if not for the counsel's error. *Lockhart*, 506 U.S. at 369. Petitioner answered affirmatively to all of the questions posed by the Court, and Petitioner was made aware of the consequences of entering the plea agreement. For example, during the plea hearing, the Court questioned Petitioner about his understanding of pleading guilty:

> [The Court]: On the other hand, if I accept your plea of guilty, there will be no trial. You'll be a convicted felon by your own statement and nothing will remain but for me to impose sentence upon you. Do you understand that?
> [Petitioner]: Yes.

(Tr. Of Plea, 5:15-19, Nov. 21, 2002). The Petitioner was made aware of the finality of signing the plea agreement and stated that he was aware of the consequences of entering the plea. Accordingly, Petitioner has not provided evidence to demonstrate that he was prejudiced in any way by counsel's actions or that he did not receive a fair hearing.

Additionally, Petitioner maintains that his guilty plea should be vacated, citing case law that describes a guilty plea as a "voluntary and intelligent choice." (Petr.'s Br. ¶ 14) (citing *United States v. Sepulveda*, 69 F. Supp. 2d 633, 638 (D.N.J. 1999)). However, Petitioner was under oath when he informed this Court that he was voluntarily entering his plea of guilty.

> [The Court]: Did anybody tell you to lie to me today?
> [Petitioner]: No . . .
> [The Court]: Have you ever been – do you believe that you're mentally ill or incompetent?
> [Petitioner]: No . . .
> [The Court]: Has anybody made any prediction or promise as to what sentence I will actually impose on you?
> [Petitioner]: No . . .
> [The Court]: Okay. So, you tell me you're pleading guilty because, you're in fact guilty and for no other reason and nobody made any threats or promises to cause you to plead guilty, is that true?
> [Petitioner]: Yes.

(Tr. Of Plea, 13:5-6, 16-18, 15:20-22, 16:14-18, Nov. 21, 2002). The answers Petitioner provided to this Court indicate that he was voluntarily entered a guilty plea. Petitioner provides no evidence that he was coerced or promised anything in return for his plea. He was informed of his rights by his counsel and the Court. Accordingly, Petitioner has not provided evidence to show that he was prejudiced in any way by counsel's actions or that he did not receive a fair hearing.

### C. Downward Departure & Sentencing

Petitioner sets forth two claims for this Court to consider in addition to his claim of ineffective assistance of counsel. First, Petitioner claims he should have been granted a downward departure of his sentence due to the differences between federal incarceration and non-federal incarceration. Second, Petitioner maintains that this Court incorrectly calculated his sentence by erroneously increasing his criminal history points and thereby depriving him of the opportunity to qualify for the safety valve exception.

#### *1. Petitioner's Arguments Regarding Downward Departure and Sentencing are Not Persuasive*

Upon direct appeal of the sentence in this case, Petitioner challenged the Court's decision not to grant a downward departure. *United States v. Lamar*, No 03-2273, 88 Fed. Appx. 487 (3d Cir. Jan. 20, 2004). The Third Circuit declined to review the District Court's failure to depart from the Guidelines, finding that it was within the District Court's discretion not to do so. *Lamar,* 88 Fed. Appx. at * 4. Upon review of the Petitioner's arguments in this § 2255 application regarding downward departure, this Court concludes that there is no basis to revisit its previous decision.

This Court also declines to consider the argument set forth by Petitioner concerning sentencing. This precise issue has already been considered by the Third Circuit. *Lamar*, 88 Fed. Appx. 487 (holding that the District Court correctly assigned Petitioner more than one criminal history point and so he was ineligible for the safety valve exception). "Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised

again in collateral proceedings under 28 U.S.C. § 2255." *Orejuela*, 639 F.2d at 1057; *see also Soto v. United States*, No. 04-2108, 2005 U.S. Dist. LEXIS 28162, at *11 (D.N.J. 2005) (concluding that the "Court has the discretion to decline to address issues in petitioner's collateral attack that were addressed to the Third Circuit Court of Appeals on direct appeal."); *DeRewal*, 10 F.3d at 105, n.4 (holding that section 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal."). The court in *Orejuela* also noted that there are "strong policies favoring finality in litigation and the conservation of scarce judicial resources." *Id.*; *see also United States v. Parker*, No. 03-6926, 2006 U.S. Dist. LEXIS 12711 (D.Pa. 2006) (declining to relitigate Petitioner's claims that were previously decided adversely to Petitioner by the District Court and the Court of Appeals on direct appeal).

### III. Conclusion

For the reasons stated herein, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied and the petition is dismissed with prejudice. An appropriate form of order is filed herewith.

Dated: July 5, 2007

                                      s/ Garrett E. Brown, Jr.
                                      GARRETT E. BROWN, JR., U.S.D.J.